IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05cr334

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| ) | |
| VERSHAWN TERRELL STOKES ) | |
| ) | |

THIS MATTER is before the Court on the defendant's motion to exclude his statement to police, for a hearing pursuant to <u>Arizona v. Youngblood</u>, and/or a continuance of the trial date. (Doc. No. 11). For the reasons stated below, the Court will GRANT the motion in part, and DENY the motion in part.

I. BACKGROUND

Defendant Veshawn Stokes is accused of carrying a firearm after having been convicted of a felony. (Doc. No. 1: Indictment). The defendant now moves to exclude from use at trial any evidence of his alleged confession because the government untimely produced a transcript of the confession, and has recently produced the original audio recording of his confession. In December 2005, the government provided discovery detailing that the defendant admitted to police that the gun was his. (Doc. No. 11: Motion at 2; Doc. No. 12: Response at 1). However, the government acknowledges that a transcript of the defendant's confession was available in August 2005, but was not provided to the defendant until April 26, 2006, because it was "misfiled." (Doc. No. 12: Response at 3). Additionally, the government admits the digital audio recording of the defendant's confession was unintentionally lost by the Huntersville Police

1

Department ("HPD") when the computer used to store the recording was destroyed. (Doc. No. 12: Response at Exhibit A).

While the defendant's motion was pending, the HPD located the missing recording. (Doc. No. 18: Supplemental Response). The government learned that the defendant's statement had been recorded on a standard audio cassette tape, and thus not loaded into the HPD computer network. (Doc. No. 18: Supplemental Response at 3). The HPD located the tapes and the government immediately notified the defendant and provided a copy of the tape to him. (Doc. No. 18: Supplemental Response at 3).

## II. DISCUSSION

### A. Youngblood Hearing

The defendant argues that the statements described as "inaudible" on the transcript could be discerned by listening to the recording itself, and the loss of the recording deprives him of the opportunity to challenge the veracity and/or admissibility of the statement. (Doc. No. 11: Motion at 4). He argues that a pattern of "repeated discovery violations, factually inaccurate statements, and repeated and inexplicable disappearance of recorded statements by the government give rise to a *prima facie* showing of bad faith" and that, at the very least, he is entitled to attempt to establish through a hearing that the government destroyed them in bad faith. (Doc. No. 11: Motion at 5). Now that the tape has been found, the defendant will have the opportunity to compare for himself the recording and the transcript. However, given the nature of the allegations by the defendant against the government, the Court will address their merits.

"Although the government has a duty to preserve evidence that possesses an exculpatory value that was apparent before the evidence was destroyed where the defendant would be unable

to obtain comparable evidence by other reasonably available means, the defendant must show bad faith on the part of the government to demonstrate a violation of due process." United States v. Newsome, 322 F.3d 328, 334 (4th Cir. 2003) (internal quotations and citations omitted). Thus, the defendant must show: (1) that the evidence possessed exculpatory value which was apparent prior to its destruction; (2) that the defendant cannot obtain comparable evidence by another means; and (3) bad faith in the destruction of the evidence. Illinois v. Fisher, 540 U.S. 544, 124 S. Ct. 1200 (2004); Arizona v. Youngblood, 488 U.S. 58, 109 S. Ct. 333, 102 L. Ed.2d 281 (1988). A defendant is not entitled to an evidentiary hearing on a motion to suppress unless it is supported by sufficiently definite, specific, detailed, and non-conjectural facts. United States. v. Cranson, 453 F.2d 123, 126 (4th Cir. 1971). Based on the record before it, the Court finds that the defendant has not made the required showing and therefore is not entitled to a hearing.

First, there is no evidence or even credible allegation that the police knew the recorded statement was exculpatory or potentially useful to the defendant. Instead, the defendant's inculpatory statement was corroborated by his companion at the time of his arrest on a state charge and reaffirmed by the defendant after he was arrested on the federal charge in December 2005. (Doc. No. 12: Response at 1-2). The leap of transforming portions of the recording described as "inaudible" on the transcript to "potentially exculpatory" is based on defense counsel's characterization of the defendant's statements as "erratic," "making no sense," and "irrational." (Doc. No. 11: Motion at 3-4). His skepticism about the accuracy of the transcript and the inculpatory nature of the statement cannot be imputed to the police absent some showing that they shared his view at the time the evidence was lost, and thus deliberately destroyed or temporarily lost the recording to subvert the truth. Considering the fact that a property clerk, and

not the detective, was responsible for transcribing and preserving the recording (Doc. No. 12 Response at Exhibit 1), the conspiracy theory postulated by the defendant lacks credibility.

Now that the tape has been found, it is not necessary to address the second requirement regarding the defendant's ability to obtain the information by other means. He is now in possession of the recording of his statement and can prepare his case accordingly.

Even if the defendant had established the first two <u>Youngblood</u> requirements, the defendant has not presented any evidence or credible allegation of bad faith by the HPD, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, or the U.S. Attorney's Office. The defendant points to an unrelated investigation conducted by the Charlotte-Mecklenburg Police Department ("CMPD") to establish "repeated and inexplicable disappearance of recorded statements" and communication regarding the fingerprint examination of the gun in this case to establish "factually inaccurate statements" which in combination, he argues, give rise to a prima facie showing of bad faith sufficient to warrant a hearing under <u>Youngblood</u>. (Doc. No. 11: Motion at 2-5).

The Court will not infer bad faith by one police department based on circumstances occurring at another police department in an unrelated investigation. The defendant has incorporated by reference the entire record of <u>United States v. Tracy Howard, et al.</u>, Case No. 3:04cr271. (Doc. No. 11: Motion at 1). In that case, tried before this Court in April 2006, defendant David Howard gave a video recorded statement to police. At the same time and on the same tape, his girlfriend accused a CMPD officer of misconduct during a search of her residence, which she shared with Howard. The tape was given to internal affairs as part of the investigation of her complaint. Thereafter, the tape could not be located. Howard's attorney, Peter Adolf, who

also represents the defendant in this case, accused the government of bad faith in the loss of the tape. (Case No. 3:04cr271, Doc. No. 255: Motion at 4). During the trial, the internal affairs sergeant located the tape in a box of personal belongings at his residence. The detective testified that he inadvertently placed the tape in the box when he moved from one office to another. (April 18, 2006, TR at 20-31). The proceedings were suspended to enable Mr. Adolf and his client to review the tape. The Court found no bad faith on the part of the CMPD or the U.S. Attorney's Office, and found that the discovery violation was unintentional. (April 18, 2006, TR at 31-32). The government chose not to seek to introduce the tape (April 18, 2006, TR at 9), but the Court stated it would have prohibited its use in the government's case-in-chief.

The circumstances of this case are completely different. They involve a different police department, different federal agents, different Assistant United States Attorneys, and different investigations. The temporary disappearance of the videotape in the Howard case resulted from a detective's inadvertent placement of the tape in the wrong box when he moved offices. Here, the temporary loss of the recording resulted from the detective's mistaken belief that he had used a digital recorder when he interviewed the defendant. (Doc. No. 18: Supplemental Response at 2). The standard practice at the HPD for detectives who use digital recorders in the field is for a property clerk to transfer the audio file to a computer network for safe-keeping. (Doc. No. 12 Response at Exhibit 1). Thus, searches of the computer network did not locate the recording and led to the conclusion that the file had been destroyed. The similarity between the Howard case and this one is limited to the absence of any misconduct on the part of the U.S. Attorney's Office and the Court's finding that the loss of the recording of each statement by police was unintentional and not in bad faith. Defense counsel's strained effort to cobble the appearance of

5

bad faith by linking the two unrelated and dissimilar matters causes his allegations to read much like Aesop's fable about the boy who cried, "Wolf!"

Additionally, the Court will not infer bad faith from the allegedly "factually inaccurate statements" by the government. Attorneys sometimes make mistakes in their communications with others, without the intention to mislead. In fact, during the Howard trial, Mr. Adolf stated to the Court:

> Your Honor, at the last side-bar the government proffered that this witness was going to testify that she had been forced – or told to read the book. . .I believe the proffer was that this was a book that she had read and that was the basis for admitting it into evidence. . .If I want to impeach her my only option at this point is to call Ms. Marston because Ms. Marston apparently either had a conversation or was present with [sic] a conversation where the witness testified contrary to what she is saying now. . .

(April 5, 2006, TR at 207). What Assistant United States Attorney Karen Marston had actually said during the previous side-bar was:

> I have been told that this is a book that she can identify, that she saw this book and was asked to read it by defendant Tracy Howard.

(April 5, 2006, TR at 207). Thus, Mr. Adolf made a factually incorrect statement, but the Court did not immediately assume he was acting in bad faith. In this case as well, Mr. Adolf set out a chronology of communication between himself and Assistant United States Attorney Joshua Howard, but failed to mention the communication in which AUSA Howard immediately notified Mr. Adolf upon learning that the recording of the defendant's statement had been lost. (Doc. No. 11: Motion at 1-2; Doc. No. 12 Response at 6-7, Exhibit 1).

Regarding the fingerprint examination of the gun, the defendant's allegations of factual inaccuracies are mistaken. Although his motion asserts that the initial discovery revealed that a

6

fingerprint examination had been conducted (Doc. No. 11: Motion at 2), the page of discovery merely states the lab report regarding firearm analysis will be provided upon receipt (Doc. No. 12 Response at 9, Exhibit 3).  The defendant states the government informed him that testing of the gun had been "cancelled," (Doc. No. 11: Motion at 2), where the government's letter actually details that the gun was never sent out for analysis (Doc. No. 11: Motion at attached March 31, 2006, letter of Robert J. Gleason).  Finally, the defendant claims the gun was tested "contrary to the government's letter of March 31. . ." (Doc. No. 11: Motion at 2).  The lab report attached to the government's response shows that the testing was done on April 6, 2006; therefore, the defendant's motion is misleading when it states that testing was "contrary to" when the facts show the testing was simply "subsequent to" the government's earlier letter.  Therefore, the Court finds that any "factually inaccurate statements" about the fingerprinting of the gun have been made by the defendant, not the government, and consequently the defendant has failed to make a prima facie showing of bad faith sufficient to warrant a hearing under Youngblood.

    B.  Best Evidence Rule

Now that the tape has been located, it is not necessary to address the defendant's argument regarding the best evidence rule, because the original recording is available for use at trial.

    C.  Discovery Violation

The government inexplicably failed to produce the transcript of the statement during the time provided by Fed. R. Crim. P. 16 and this Court's Standard Discovery Order (Doc. No. 4).  The government also did not provide a copy of the recording of the defendant until shortly before scheduled trial.  Thus, the Court must consider the appropriate remedy or sanction for these discovery violations.

"In determining what sanction, if any, to impose for a discovery violation, the district court must weigh the reasons for the government's delay and whether it acted intentionally or in bad faith; the degree of prejudice, if any, suffered by the defendant; and whether any less severe sanction will remedy the prejudice and the wrongdoing of the government." United States v. Hammoud, 381 F.3d 316, 336 (4th Cir. 2004). The Court must impose the least severe sanction that will adequately punish the government and secure future compliance, and a continuance is the preferred sanction. Id.

Here, the Court finds no bad faith in the delay by the government in providing the required information. The failure to provide the transcript of the defendant's statement in its possession was negligent, but there is no proof or credible allegation that it was intentional. The failure to provide the recording resulted from the detective's mistaken belief that he had used a digital recording. Thus, efforts to locate the recording on the computer network were fruitless. The government was negligent in not locating the tape earlier, but there is no proof or credible allegation that its delay was intentional. The Court further finds that any prejudice to the defendant by the late provision of the transcript and recording can be cured by a continuance. The defendant's request for total exclusion of the statement is too severe. United States v. Golyansky, 291 F.3d 1245, 1249 (10th Cir. 2002) ("It would be a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings."). Therefore, the Court will grant the defendant's request to continue the trial of this case as a remedy for the discovery violation.

D. Motion to Continue

As stated above, the defendant's request for a continuance will be granted.

IT IS, THEREFORE, ORDERED that the defendant's motion is GRANTED in that the trial of this case will be continued until the Court's June 5, 2006, term of court. The defendant's motion is DENIED in that the defendant is not entitled to a <u>Youngblood</u> hearing and the statement will not be excluded as a sanction for the discovery violations.

Signed: May 10, 2006

_Robert J. Conrad, Jr._
Robert J. Conrad, Jr.
United States District Judge